1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No. CR 13-00007 SI

12              Plaintiff,                          **ORDER DENYING DEFENDANT'S**
                                                    **MOTION TO SUPPRESS STATEMENTS**
13       v.

14    JOSE SOLTERO,

15              Defendant.
      _____/
16

17          On June 18, 2014, the Court held an evidentiary hearing regarding defendant Jose Soltero's

18    motion to suppress statements on voluntariness grounds.[1]  Having considered the testimony received,

19    the arguments of counsel, and the papers submitted, the Court hereby DENIES defendant's motion to

20    suppress.

21

22                                   **BACKGROUND**

23          On January 8, 2013, defendant Jose Soltero was indicted on five counts of Hobbs Act Extortion,

24    in violation of 18 U.S.C. § 1951(a); three counts of impersonating a federal officer or employee to

25    commit extortion, in violation of 18 U.S.C. § 872; and related forfeiture allegations.

26

27    _____

28          [1]Also before the Court is the government's motion to strike the declaration of James Tansey filed
      in support of defendant's motion to suppress. *See* Dkt. No. 61.  Because the Court held an evidentiary
      hearing in this case, and will therefore not rely on the Tansey Declaration in making this ruling, that
      motion is DENIED AS MOOT.

On September 16, 2011, at approximately 12:45 p.m., defendant was arrested and taken to the San Mateo Police Station. He was held there until approximately 11:15 p.m., and while in custody he made a number of incriminating statements.

On May 2, 2014, defendant filed a motion to suppress the statements he made while in custody, arguing that they were not made voluntarily. On June 2, 2014, the Court granted defendant's request for an evidentiary hearing. On June 18, 2014, the Court held an evidentiary hearing and heard testimony from the defendant, and from one of the FBI agents involved in the challenged interrogation.

At the evidentiary hearing, defendant testified as follows. Defendant suffers from Type II diabetes which requires him to take pills several times a day. On September 16, 2011, defendant was on his way home from running errands when he was arrested and taken to the San Mateo County Police Station. At the time he was arrested, defendant was on his way home to have lunch and take his diabetes medication.

At the police station, defendant was placed in a small interview room. Special Agents Ablett and Songsanand entered the room and asked defendant booking questions for approximately 45-50 minutes. At some point defendant informed the agents that he was a diabetic and that he needed his medication. The agents did not provide defendant with his medication or stop the interview. Defendant testified that he felt intoxicated and his vision became blurry. He stated that one of his legs was shaking and that, when he again told Agent Songsanand that he needed his medication, the agent responded that he could see that.

Defendant testified that he asked the agents several times for permission to call Michael Gaines, a lawyer who had previously represented his son in a drunk driving matter. Defendant stated that, each time he asked to speak to Michael Gaines, the agents asked him if he was asking to speak with a lawyer. Each time, defendant said no, he just wanted to ask Michael Gaines some questions. Defendant testified that the agents told him that he could not speak to Michael Gaines, and that if he wanted to speak with a lawyer, the interview would end and they would book him into jail where he could call his lawyer.

Defendant also testified that, at one point during the interrogation, the agents left the room and defendant felt so sick that he vomited into a trashcan in the interview room.

2

**United States District Court**
For the Northern District of California

1    Special Agent Ablett also testified at the evidentiary hearing. She testified that the agents asked

2  defendant about his medical history and any medication he was taking as part of the general booking

3  questions. She stated that they were aware from that point that defendant took medication for diabetes,

4  but that he never told the agents that he needed to take his medication at that time.

5    Ablett testified that defendant began to admit wrongdoing immediately after the booking

6  questions were completed. She stated that defendant told the agents that, if they had been following him

7  and listening to his calls, they knew what he had been doing. He said that it had not been his idea, but

8  that he still knew it was wrong. Ablett stated that defendant asked at one point to call "a friend." When

9  the agents asked defendant who his "friend" was, he responded that it was Michael Gaines. The agents

10  were aware that Michael Gaines was the lawyer of one of the alleged victims in the case under

11  investigation. The agents considered Michael Gaines a potential witness in the case, and told defendant

12  that he could not call Michael Gaines. The agents asked defendant if he wished to speak to a lawyer.

13  Defendant said no.

14    According to Ablett's testimony, defendant never asked for food or mentioned his medication

15  until around 6 p.m. Ablett stated that, as soon as defendant mentioned that he needed his medication,

16  she contacted an agent who was conducting a search of defendant's residence at that time, and asked

17  him to please locate the medication and bring it to the police station. Approximately 50 minutes later,

18  the medication arrived at the station and defendant was able to take it.

19    Ablett also responded to defendant's testimony regarding the trashcan. She stated that, after

20  defendant was given his medication, she was in an adjoining room and was monitoring defendant

21  through a video feed. She witnessed defendant lean over the trashcan and spit into it, but did not see

22  him vomit. Although Ablett spent several more hours in the small interview room with defendant, she

23  never saw or smelled vomit in the trashcan.

24

25                                          **LEGAL STANDARD**

26    "[A] defendant in a criminal case is deprived of due process of law if his conviction is founded,

27  in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the

28  confession . . . ." *Lego v. Twomey*, 404 U.S. 477, 483 (1972) (citation omitted). When a defendant

3

raises the issue of voluntariness with respect to his confession, he is entitled to have the issue decided by a tribunal other than the convicting jury. *Jackson v. Denno*, 378 U.S. 368, 391, n.19 (1964). That tribunal must fully resolve the constitutional issue, "including the resolution of disputed facts upon which the voluntariness issue may depend." *Id.* at 391. "When the initial determination is to be made by the trial judge, he must resolve all of the factual conflicts upon which the voluntariness issue depends, following a full evidentiary hearing." *Wallace v. Hocker*, 441 F.2d 219, 221 (9th Cir. 1971).

A confession obtained in violation of the Due Process Clause of the Fourteenth Amendment is inadmissible against a criminal defendant. *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964). A confession may be involuntary if it is not "the product of a rational intellect and a free will." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). To determine whether a confession was involuntary, a court "examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000). Voluntariness is determined with reference to the totality of the circumstances surrounding the challenged confession, *Miller v. Fenton*, 474 U.S. 104, 112 (1985), including the defendant's level of maturity and education, his physical and mental condition, the length and location of the interrogation, and whether the defendant was properly advised of his *Miranda* rights, *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

However, absent coercive police conduct, a court need not undertake the subjective totality of the circumstances analysis. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The Supreme Court has recognized that the "crucial element" in a finding of involuntariness is "police overreaching." *Id.* at 163. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164; *see also id.* at 165 (recognizing "the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other").

## DISCUSSION

Defendant moves the Court to suppress his statements on voluntariness grounds. He contends that, because he was denied his medication and threatened with jail if he wanted to speak to a lawyer,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   his statements were obtained through coercion and are thus inadmissible against him. The Court

2   disagrees.

3           Because defendant has put the voluntariness of his statements at issue, the Court must resolve

4   all factual conflicts bearing on the voluntariness of defendant's statements. *See Wallace*, 441 F.2d at

5   221. At the hearing, the Court found Special Agent Ablett's testimony credible. The Court credits

6   Ablett's version of events over defendant's, and finds that defendant did not request his diabetes

7   medication until close to 6 p.m., long after he began making the incriminating statements he now seeks

8   to suppress. Additionally, although it might have been a better practice for the agents to provide lunch

9   for defendant, given that they were aware he was a diabetic, there is no evidence that defendant asked

10  for food and was denied.

11          Regarding defendant's physical condition in the absence of his diabetes medication, the Court

12  credits defendant's testimony that he felt increasingly ill without his medication. However, the Court

13  believes Ablett's testimony that the agents were unaware that defendant was feeling the effects of the

14  lack of medication until he asked for his pills at 6 p.m.

15          The Court further finds that defendant's testimony regarding vomiting in the trashcan is not

16  credible. Both witnesses described the interrogation room as a small space; indeed, Ablett estimated

17  that it was approximately eight feet square. If defendant's version of events was accurate and he

18  vomited into the trashcan at some point during the afternoon, then he and both agents remained in a tiny

19  room with a vomit-containing trashcan for more than five hours. The Court finds this story incredible,

20  and credits Ablett's testimony that defendant merely spat into the trashcan after taking his medication.

21          There is also a factual dispute regarding defendant's request to call Michael Gaines. Defendant

22  claims that he asked to call him several times, while Ablett recalls only a single request. The Court will

23  assume *arguendo* that defendant made several requests to call Michael Gaines, as defendant testified.

24  Both witnesses testified that defendant was asked if he wished to speak with a lawyer, and defendant

25  responded in the negative. Both witnesses testified that defendant was told more than once that, if he

26  wished to speak with a lawyer, the agents would book him into jail and he could then call his lawyer.

27          Having resolved the relevant factual conflicts, the Court finds that defendant's statements were

28  not involuntary. The Court has found that defendant did not ask for his medication, and that the agents

5

United States District Court
For the Northern District of California

1   were unaware that defendant was not feeling well, until after he had already made the incriminating

2   statements.  Although the Court credited defendant's testimony that he began feeling unwell much

3   earlier in the day, the law does not require agents to be mind readers.  Only where a confession is

4   obtained through coercive police behavior is suppression mandated on voluntariness  grounds.  *See*

5   *Connelly*, 479 U.S. at 170-71 (refusing to suppress confession where defendant believed the voice of

6   God compelled him to confess).

7          The Court has assumed that defendant made several attempts to call Michael Gaines, and that

8   all of those requests were denied.  As noted above, the agents informed defendant more than once that,

9   if he wished to speak with a lawyer, they would book him into jail.  Even treating these statements as

10  veiled threats, the Court finds that they were not so coercive as to overbear the will of an individual like

11  the defendant.  *See Dickerson*, 530 U.S. at 434.  Defendant testified that he had worked for various law

12  enforcement agencies over a period of at least thirteen years.  On at least one previous occasion,

13  defendant had been brought to a police station for questioning regarding behavior in which he engaged

14  that concerned an agency for whom he was working at the time.  Thus, defendant was not unfamiliar

15  with the ways and means of law enforcement agencies.  Considering the totality of the circumstances,

16  the Court finds that the veiled threats to book defendant into jail if he wished to speak with a lawyer

17  were not sufficiently coercive so as to render defendant's statements involuntary.  *See Miller*, 474 U.S.

18  at 112; *Withrow*, 507 U.S. at 693-94.

19         Accordingly, the Court finds that defendant's statements were not involuntary, and therefore

20  DENIES defendant's motion to suppress.[2]

21

22

23  ///

24  ///

25

26

27         [2]Defendant further moves the Court to suppress statements he made on September 17 and 19,
28  2011, as fruit of the poisonous tree.  However, because the Court has found that defendant's initial
    statements were voluntary, the later statements were not tainted.  Therefore, the Court further DENIES
    defendant's motion to suppress the statements made on September 17 and 19, 2011.

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES defendant's motion to suppress.  This Order resolves Docket Nos. 54 and 61.

**IT IS SO ORDERED.**

Dated: June 25, 2014

_____
SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

7