UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 13-00007 SI (LB) |
| Plaintiff, | **ORDER** |
| v. | [ECF No. 185] |
| JOSE SOLTERO, | |
| Defendant. | |

## INTRODUCTION

The district judge ordered certain discovery on February 18, 2015, and thereafter referred discovery to the undersigned to review whether the government complied with her order and whether the FBI manual on informants should be disclosed to counsel for defendant Jose Soltero. (2/18/15 Discovery Order, ECF No. 170; 2/25/15 Referral, ECF No. 185; 2/25/15 Transcript ("RT"), ECF No. 194; Referral, ECF Nos. 185, 192.)[1] The parties submitted briefs and supporting declarations, and the government submitted for *in camera* review (1) the FBI manual and (2) unredacted copies of materials that it disclosed to Mr. Soltero in redacted form. (ECF Nos. 195-198, 202, 204-205.) The court held a hearing on March 19, 2015, and ordered the discovery memorialized in this order. (*See* Minute Order, ECF No. 206.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER
CR 13-00007 SI (LB)

**STATEMENT**

The indictment charges extortion under the Hobbs Act and impersonating a federal police officer arising out of what the government alleges is Mr. Soltero's shakedown of growers of marijuana. The government says that the growers paid Mr. Soltero money in return for his promise to prevent the government from (1) investigating grow sites ("rent" payments) and (2) raiding grow sites and arresting growers ("help" payments), all from roughly October 2009 until September 2011. (*See* Indictment, ECF No. 1; Government's Trial Memorandum, ECF No. 115.) Mr. Soltero was a confidential informant ("CI") at various times for the DEA, the FBI, and a particular San Francisco police officer. According to the government, eventually the growers complained to the FBI. The investigation and indictment of Mr. Soltero followed. The record reveals three growers, two who are testifying witnesses (Kevin Lieu and Eric Tran) and one who is no longer testifying (Sam Mac). All three were informants, at least during the investigation of Mr. Soltero.

When agents arrested him for the extortion scheme, Mr. Soltero admitted his conduct but said that he was not the instigator. Instead, he said, he acted the direction of the San Francisco police officer who handled him. (*See* 2/25/15 RT, ECF No. 194.)  The following account is in the transcript of a discovery hearing before the district judge. (*See id.*) According to Mr. Soltero, his handling officer got most of the money. Based on this accusation, the agents arranged for Mr. Soltero to call the officer, saying something to the effect of, "I have the money."  (*See id.*) The officer responded with something along the lines of, "I don't know what you are talking about.  Where are you?"  The record reveals that the officer knew Mr. Soltero was in jail because Mr. Soltero's wife called the officer and told him. A day or so later, the officer called the federal agents and said something to the effect of, "I'm concerned I'm being set up." The FBI investigated the officer, including searching his emails, getting a credit report, and reviewing his financial information, but the government never charged him because (they say) nothing corroborated the allegation that he was on the take through the delivery device of this (or any) scheme. The officer's attorney told the government that the officer will not speak with the government now without a grant of immunity. The government has no plans to immunize him. (*See id.*) At the March 19, 2015, hearing, the government said that the officer remains on active duty with the San  Francisco police department ("SFPD").

ORDER
CR 13-00007 SI (LB)                                              2

The discovery issues that were referred to the undersigned for a "compliance" review all involve this SFPD officer, his conduct, and the appropriateness (for lack of a better word) about how the law enforcement agencies handled Mr. Soltero and whether they followed procedures for handling confidential informants. The other issue is whether, following the spirit of the district judge's prior discovery orders, the government must disclose the FBI's manual on handling confidential informants. The following chart summarizes the district judge's discovery rulings that are implicated by the referral and any resolutions that preceded the undersigned's compliance review.

| PRIOR DISCOVERY DISPUTES | |
|---|---|
| **Date of Order** | **Synopsis of Dispute and Resolution** |
| 2/23/15 ECF 176 | Produce the DEA manual excluding the sections regarding protection of foreign confidential sources, subject to protective order (filed at ECF No. 179). Produced (and not raised as a production issue at the 3/19/15 compliance hearing). |
| 2/18/15 ECF 170 | Produce full and complete government investigation into corruption allegations made against the SFPD officer and SFPD Officer Rickey LNU. (For the uninitiated, LNU stands for "last name unknown.") |
| 2/18/15 ECF 170 | Produce impeachment information relating to Kevin Lieu, Eric Tran, and Sam Mac, including CI files, benefits conferred or offered by state or feds, results from investigations into prior criminal activity, and criminal history. Government found nothing with SFPD or DEA and produced information from FBI. (ECF No. 171 at 3-4.) |
| 2/18/15 ECF 170 | Ask SFPD again whether SFPD has any file on Lieu. Asked through police legal liaison Ronnie Wagner; answer was no. Asked officer through counsel; answer was no. |
| 2/18/15 ECF 170 | *Henthorn* requests related to the SFPD officer. Follow up and ask again. Produce complaints; if not sure, submit *in camera*. If no complaints, say so. |
| 2/18/15 ECF 170 | All SFPD policies regarding CI and human sources. Produced (and not raised as a production issue at the 3/19/15 hearing). |
| 2/18/15 ECF 170 | Records regarding cases where Soltero provided information to law enforcement as a confidential source that disclose type and number of criminals Soltero helped apprehend. Produced (and not raised as a production issue at the 3/19/15 compliance hearing). |

The following are the materials that the government submitted for *in camera* review: (1) the FBI Confidential Human Source Guide; (2) CI file for Eric Tran with redacted portions highlighted; (3) CI file for Kevin Lieu with redacted portions highlighted; (4) FBI 302 for interview with FBI SA Karin McInturff with redacted portions highlighted; and (5) FBI 302 for interview with Carlos

ORDER
CR 13-00007 SI (LB)               3

Alfaro with redacted portions highlighted. (A 302 is the number that the FBI uses for reports and is used here as a shorthand for "report.")

## ANALYSIS

The following are the undersigned's rulings made at the March 19 hearing.

**I. FBI 302s**

The court ordered the government to produce unredacted versions of the two 302s at issue for the reasons stated on the record.

**II. REDACTED PORTIONS OF CI FILES FOR ERIC TRAN AND KEVIN LIEU**

The court does not order production. There are roughly 26 pages in all. As explained at the hearing, the undersigned reviewed the documents. They contain no information that is useful, relevant, or illuminating. They do not provide any useful context. Examples of the redactions are case file numbers, routing information, or authorizations and approvals for evidence (such as a recording) that was later obtained and disclosed. The government confirmed that any attachments (such as a pdf or Word document) were produced and that all discovery disagreements were made manifest through the parties' briefing and redacted submissions (e.g., the redacted 302s that the court ordered produced in the last section). There is nothing here.

**III. FBI MANUAL**

For the reasons stated on the record, the court does not believe the FBI manual should be disclosed. The court considered the reasons that the defense proffered and takes a broad view (made manifest in its disclosure of the redacted 302s) about the appropriate breadth of discovery given what appears to be the defense in this case. But even considering that Mr. Soltero was an FBI CI in 2003 and again from March 2005 to November 29, 2010, the court does not view the FBI's manual as disclosable. In particular, the court does not think the link between the FBI and the San Mateo Narcotics Task Force renders the information relevant, even considering Mr. Soltero's alleged CI work there. The defense in this case implicates whether this SFPD officer, working with this DEA task force, worked appropriately with a CI who perhaps (under the government's theory) went rogue or perhaps (under the defense's theory) worked at the direction of an SFPD officer who went rogue. That may militate in favor of disclosing the CI procedures for the DEA and the FBI. For example,

1  the United States Attorneys' Manual ("USAM") describes a policy of broad disclosure of potential
2  impeachment information, including "(2) failure to comply with agency procedures for supervising
3  the activities of a cooperating person (C.I., C.S., CHS, etc.)." USAM") 9-5.100(c)(v)(3). But the
4  fact of other work with a different task force does not render discoverable the CI procedures of the
5  FBI. Moreover, the government disclosed the FBI's CI files regarding Mr. Soltero.

6  For what it is worth, and as the court said at the hearing, the FBI's procedures are thorough and
7  entirely predictable. The reality is that producing the materials is not that consequential, particularly
8  given that the court could identify portions of the CI manual that (again) are predictable, do not
9  implicate issues of national security, and could be produced under a protective order. That being
10 said, the court rules that the information is not disclosable here.

**IV. THE FULL AND COMPLETE INVESTIGATION INTO THE SFPD**

12 As summarized in the chart above, the district judge ordered production of the "full and
13 complete" government investigation into the corruption allegations made against the SFPD officer
14 and SFPD officer Rickey LNU. Mr. Soltero's counsel pointed to the district judge's use of the
15 words "every scrap of paper" and her evident unhappiness with the drips and drabs of disclosures to
16 support his argument that compliance with the district judge's order requires a literal photocopy (or
17 its electronic equivalent) of the FBI's (or, really, the government's) entire file. The argument is that
18 the district judge removed all discretion from the government and required disclosure of "every
19 scrap of paper," period. The undersigned does not construe the district judge's order so literally.

20 As Section II, "*Redacted Portions of CI Files for Eric Tran and Kevin Lieu*" (*supra*),
21 demonstrates, not every scrap of paper in the FBI's file contains information about the investigation.
22 Much of the file does contain discoverable information (as the district judge here defined it). For
23 example, part of the file is for physical evidence, part is for reports, and part is for information such
24 as proffers or communications from victims or witnesses that the agent in turn cross-references to a
25 302 report. But even there (as discussed at the hearing) there may be information that the defense is
26 not entitled to know. An operations plan, for example, might have disclosable information about
27 who was at a surveillance and where they were (if relevant to percipient witness testimony or an
28 attack thereon), and it might point to other discoverable information about recordings or

ORDER
CR 13-00007 SI (LB)                                                  5

1  photographs. But the defense is not allowed global insight into plans that reveal (for example) hand
2  signals or code words for a take-down or even (potentially) an agency's high-end technology that
3  imbeds a recording device or a camera in a pen (examples that the undersigned made up to
4  demonstrate the issue). In the end, it is not the format of information that drives what is
5  discoverable. It is the content.

6  At the hearing, government attorney said that he personally reviewed the entire FBI file, as he
7  should, and he produced everything there that reflects the FBI's investigation. *See* David W. Ogden,
8  Deputy Attorney General, Memorandum For Department Prosecutors, "Guidance for Prosecutors
9  Regarding Criminal Discovery," January 4, 2010, at 4-6.  The one area that he did not review was
10 the FBI's notes.  The court does not order disclosure of the notes.  They are not discoverable. Unlike
11 an agent's formal 302, which is reviewed and signed by the agent, an agent's rough notes that are
12 not formal and complete are not "statements" that must be produced under the Jencks Act, 18 U.S.C.
13 § 3500, and Federal Rule of Criminal Procedure 26.2. *See United States v. Alvarez*, 86 F.3d 901, 906
14 (9th Cir. 1996). That being said, and leaving aside the implications of Rule 16, *see United States v.*
15 *Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007), the government has produced the 302s.  What remains at
16 issue is whether there is anything in the rough notes that did not make it into the 302s. If there is,
17 then that information must be disclosed because that is what the district judge ordered. The
18 government must review (and said that it would review) the rough notes and disclose any
19 information that is not in the 302s themselves.  (The reality is that the FBI ordinarily agrees to
20 production of rough notes with information that is not in the 302s. The reality too is that the reports
21 generally are comprehensive and complete.)

22 To the extent that the defense argued that it is entitled to the prosecutor's work product (such as
23 the prosecution memo), the undersigned does not order that disclosure. That being said, the
24 prosecutor's own notes of witness interviews are not work product (except for impressions and the
25 like), and the prosecutor must review those notes not only for *Brady* or impeachment material but
26 also to be for information responsive to the district judge's discovery order. Put another way, "every
27 scrap of paper" does not mean disclosure of the paper itself, but it means disclosure of information
28 on the paper that reveals the government's investigation.

## V. *HENTHORN* REQUESTS REDIRECTED TO THE SFPD

The government affirmed that it had complied with the district judge's directive to submit its *Henthorn/Pitchess* requests again to the SFPD, and it received no responsive information. That representation is sufficient. If the defense is not satisfied, it can submit a Rule 17(c) subpoena. (*See* General Order 69.) The general order provides a process where the defense subpoenas information, the responding agency produces it pursuant to a protective order (attached to G.O. 69), the defense can use the information at trial only after receiving the district judge's advance permission to do so, and the information must be returned to the court or the producing agency at the end of the complaint. (*Id.*) The government affirmed that it would not challenge production of the information pursuant to a protective order, given that the U.S. Attorney's Office was part of the negotiated process that resulted in the order. (That being said, police legal's position may be different.)

## VI. FULL PRODUCTION OF ALL CI INFORMATION

The government asked SFPD Legal (through Ronnie Wagner) whether it had CI files for Lieu, and the SFPD responded that it did not. The "handler" for Lieu also was the SFPD officer that Mr. Soltero accuses. The government asked the SFPD officer (through his attorney) whether he had a file (because officers can keep "desk" files). The answer was no. There is nothing more that the government can do. As the undersigned pointed out to defense counsel, if the point is to attack the integrity of the handling of a CI, the lack of information potentially is useful. In any event, all the government can do is verify the discovery landscape, and it has done that.

## CONCLUSION

The court orders the discovery memorialized above (including the review of notes and production of any information not in the 302 reports). Otherwise, the court concludes that the government complied with the district judge's February 18, 2015 discovery order.

**IT IS SO ORDERED.**

Dated: March 21, 2015

LAUREL BEELER
United States Magistrate Judge